Case number 23-1142. Indu Rawat, Appellant v. Cmsnr of Internal Revenue. Mr. Rizek for the Appellant. Mr. Rennie for the Appellant. Good morning, Council. Mr. Rizek, please proceed when you're ready. Good morning, Your Honor. My name is Chris Rizek. I am counsel for the Appellant, Indu Rawat. At the Council table is my co-counsel, Layla Carney. This is a federal tax case involving the source of income when a foreign person sells a U.S. partnership interest. In that respect, it's very similar to the—involves the same general rule as this Court's opinion in Grecian Magnesite in 2019. That general rule being that income from the sale of personal property is sourced to the residence of the seller, and at this time in 2008, Mrs. Rawat was a resident of India. Like the taxpayer in Grecian Magnesite, Mrs. Rawat was not engaged in a U.S. trade or business involving the purchase or sale of partnership interests. Consequently, the proceeds of the sale are not effectively connected income, just as in Grecian Magnesite, and thus not subject to U.S. sourcing and taxation. Unlike Grecian Magnesite, however, which involved the U.S. office exception to the general rule, this case involves no clearly applicable exception. Instead, because of an income characterization rule that's in the partnership provisions of the Internal Revenue Code, the Commissioner contends that Mrs. Rawat is deemed to have sold inventory and that it's therefore effectively connected with her business rather than with the partnerships, and they claim that the sourcing exception applicable to actual sales of inventory therefore applies. Commissioner's contention and the tax court adoption of it are the error we're contesting here. Now, to get there, you have to understand a little bit about the way the there are a whole series of steps in deciding how something is taxed, whether there is an income realization, whether it's recognized, how it's calculated, what the source, what the character of that income is, and then ultimately what the source of it is. It's only this last question that is really in dispute because this, in a short, centers on what was sold, and all those original questions have been stipulated. It's what was sold that determines whether the resulting income from the sale is sourced U.S. or foreign, and consequently, whether Mrs. Rawat is taxable on it. The key point here, in fact, the tax court referred to this as the most important point, which we were correct about, is that Mrs. Rawat sold a partnership interest, not inventory, because factually there seems to be no dispute about that. That's what the transaction documents say. That's what she got consideration for. She never sold inventory. The inventory in question always remained in the partnership, which it's actually an LLC named Innovation Ventures, but it's taxable as a partnership. She never sold inventory, and I don't think the commissioner contests this point. Instead, the commissioner says there is a deemed sale. Commissioner's brief uses deem or deemed by our count 24 times, which is exactly 24 more times than that word is used in the applicable statutes. Most of the cases... The statute does say shall be considered. I'm sorry? The statute does say shall be considered. Shall be considered, yes. Shall be considered in some sense means could mean the same thing as deemed. Well, deemed is actually a word that Congress uses intentionally. If you look at footnote 8 of our reply brief, for example, in response to the commissioner's deemed, those actually have the word deemed in it. In fact, the later provision even in section 751 has the word deemed in it. Do you think that if 751A had the word deemed instead of shall be considered, then that it would be more than just an income characterization rule? If it said there is deemed to be a sale of the inventory receivables, yes, I think that would be the case, your honor. It's not what it says. 751 or 740? I'm sorry? Are you talking about 751 or 740? 751. 741 doesn't really apply here except to say that the gain is it's a partnership interest, a single property that is sold, and that the gain is generally in a character capital gain. I thought you... And then 751 says the amount of money received that's attributable to inventory, the amount of money or property received shall be considered as received for the sale or exchange of a capital asset. In that language... Maybe I misunderstood, but I thought your argument was that 741 is what controls here. Well, we agree that a portion of the gain is... We agree that a portion of the gain is subject to section 751. What we don't agree is that that therefore makes it an actual sale of... Or even a deemed sale of inventory to which 865B, the sourcing rule, exception applies. I thought that for the purposes of whether you win this appeal and for the purposes of whether this money is going to be taxed or not, I thought 741 says, okay, do we do asset theory or do we do aggregate theory? And then once we have pitched the theory and decided on the thing that has been sold, then we look to 751 to say, okay, that gain that we're talking about, we're going to count some of it as capital and some of it as ordinary. That's a correct analysis, Your Honor. But 741 also says in general that gain is capital except to the extent 751 makes it ordinary in nature. And that language that it used shall be considered as an amount realized from the sale of exchange of property other than a capital asset. That is language that was used throughout the code prior to the 1970s when it was changed to just mean ordinary income. You know of another provision in the tax code that does what you're doing here. In other words, another provision that says, okay, we take the asset theory, we're talking about one thing, and then once we've figured out the gain, then we're going to classify part of that gain as ordinary and part of that gain as capital. I'd have a hard time thinking of one in the partnership provision. 751 is the only one that I'm aware of. But there are certainly situations in the code where the character is differentiated, usually based on the holding period, whether it's long-term capital gain or short-term capital gain. Short-term capital gain is then treated as ordinary income in most cases and netted with ordinary losses. I mean, there's a lot of rules like that, but nothing that says... Your reading of the statute might make it something of an anomaly within the partnership tax part of the code, but not so much an anomaly within the larger tax code. Well, yeah. I mean, even the provision it's in says this is common to other parts of Subchapter K, which is a partnership rule. Subchapter N of the code, which is the sourcing provisions, is completely different. There's really not an awful lot of overlap between them. Subchapter K tells you what the character of the income is, particularly in 741 and 751, when you sell or redeem, as the case may be, 731, a partnership interest. And that was the issue in Grecian Magnusite. They redeemed a partnership interest, and the court there said it's a single interest. It was capital in nature in that case. The issue there was whether there was a sourcing exception that applied to it. And the court said, well, she wasn't in a trade or business of selling or the partner there, Grecian Magnusite, wasn't in the business of selling the underlying Magnusite. And the partnership wasn't in the business of trading partnership interests. They're different. So there's nothing that's effectively connected to her trade or business here. It would be if the partnership, if a sole proprietor, for example, sold inventory, that would be subject to U.S. source. But that's not what happened here. The problem is the government has to make this leap between, the court would have to make this leap between a character provision implying that there's a sourcing rule that goes with it, because there's no language that does that. If the partnership had sold the inventory here, but it had done it for what left the partnership, then would she have paid taxes on it? She would have gotten a, what the code refers to as a distributive share of that amount received of the income net, obviously. And that would be a U.S. source because that's what 875 says that a partner is in that trade or business to the extent of those when she sells her own property. So that's the distinction. Can I ask about 751B? This hasn't been talked about in the briefing, but 751B deals with distributions and treats certain distributions as sales. And it specifically talks about and then it says that such transactions where a partner receives in a distribution, inventory for example, such transactions shall, under regulations prescribed, be considered as a sale or exchange of such property between the distributee and the partnership. And such property, I take it, means the inventory. It would be the inventory defined in the preceding paragraphs, yes. So 751B, it does use such property and 751A does not. So that's a question. Let me just finish this and then I'll get your response. I take that point, but 751B treats the inventory as itself a piece of property. And what would be the reason for doing that? And you don't think 751A does that. 751A doesn't do that. It uses very different language. Right. I mean, you think it doesn't, the other side disagrees. I mean, so to get past the conclusory point that you think 751A doesn't do what 751B does, what would be the rationale for a different treatment as between 751A and 751B? It's the same as Grisha and Magda said. She's not in the trade or business of partnerships. For a distribution or a redemption, that is very much akin to an allocable share, distributive share kind of transaction. If you look at the subject and what's getting treated in 751A, it's the amount of money. It doesn't sever the product. And what 751B is doing is saying, if they actually sold inventory or distributed out inventory, it's treated as if it's sold. And there's a good policy reason for that. Just different trades or businesses. And I guess the thing is, nobody disagrees that 751A does the work that you think it does, which is the income characterization work. Everyone agrees to that, I believe. Right. The question is whether it does more. And it's not clear to me what in 751A exclusively shows that it doesn't do the more that the it's the character of the income that is at issue. Because the subject in a sense is the amount of money or fair market value of the property. And it says it, we get through all of what it comes from, it shall be considered as ordinary income or as an amount realized for the sale exchange of property other than a capital asset. So it's the fact that it starts out by saying the amount of any money that's doing. Yeah, that's what it's about. Then the fact then if shall be considered or replaced with deemed, that still wouldn't do it for you. It still wouldn't get you there, I think. But it's certainly coming out by saying that it would get you there. Well, I don't think it gets you there. I don't think it gets you to saying there's an actual sale of inventory property that therefore gets sourced U.S. Right. It's treated as if there were an actual sale of inventory. Well, I take it that's the commissioner's. The gain is considered as if it were from that. Yes, that's what 751A says. Right. It definitely does that. And then the question is, does it do more? I there's no evidence anywhere that I can see that it does. I had reserved some time, so I think unless there's further questions. Oh, I'm sorry. The nature of this sale was very maybe it's not unusual, but doesn't look like a sale that I do. It is a 20 promissory note with 20 years of just interest payments. Mm hmm. And that 20 years means it takes it. Not just through the period issue here, but past the 2018 amendments, there's a tax status change for the years after the 2018 amendments. That would be that would be a different year that we don't have in front of us. But I'm sure it actually was. It actually was. I think it's a moot point here because the balloon payment on the note has already been made. Was it made before 2018? I don't know for sure. I think it was 2016, but I'd have to go back and check. And the 2018 amendments would did adopt the commissioner's approach. They're fully prospective. I'm not saying it covers here, but the 2018 amendments that Congress said, we want this to be treated like a sale of inventory. Yes. When Congress decided to adopt the rule that this court had rejected in Grecian Magnesite and that the commissioner had advocated for, it wrote a very clear rule that does that very extensive rule. But there's we shouldn't take from that an indication that that's what Congress meant all along. Well, they didn't include no adverse inference language in their legislative history. And the fact that this court thought it was wrong and that they were responding to the tax court when they enacted that indicates to us that the rulehead was what this court enunciated. And they were reacting to it by saying, no, we want to do something else. And are there other parts of the tax code building on Judge Walker's question where Congress changes the character of the gain without changing how it considers the underlying transaction? So here your argument is they just change the character of the gain, but they still are looking at the underlying transaction as the exact same unitary sale of personal property. There are a bunch of provisions in the code dealing with a capital asset as defined in Section 1221A and dealing with them in all sorts of different matters. Self-created intellectual property, for example. In doing that, are they speaking as much to the income character as they are to the nature of the transaction itself? It seems a little odd here that they have chosen to change the character, but in your theory are leaving the nature of the for both the non-inventory and inventory parts of the partnership sale. And it seems a little odd to go to all the trouble of changing the character without conceptualizing in any different way what it is that's being sold. I assume that's the point of changing the character. Properties in the trade or business is an example of non-capital property that there are extensive provisions on how you can depreciate or amortize it, for example. And those don't change the underlying transaction in any way. In many cases, it's not even a transaction. It's just a tax treatment. But the code is replete with those sorts of things that don't, therefore, change the underlying asset. And there's other provisions within the partnership provisions specifically that do this? Is it the code? Yeah, the distribution provision that Judge Srinivasan mentored, 731, none of those things affect sourcing directly or change the underlying transaction. The latter that I'm interested in. Right. Okay. Thank you. Thank you, Your Honor. Thank you. We'll give you a little time for rebuttal. Thank you. Mr. Rennie. Good morning, Your Honors. I'd like to start by directing your attention to Section 865, because that is what ultimately controls the sourcing issue here. There are three relevant subparts. Subsection A, B, and I. A provides that income from the sale of personal property is generally sourced by residents. Then Subsection B provides that income, quote, derived from the sale of inventory property is not sourced according to residents. So, we have a key difference in the phrasing here, this phrase derived from, which in this sense, I would submit means to take its origin or to arise out of. Combine that with the fact that under Subsection I, which is the definition section, a sale can means any other type of beyond a formal sale like abandonment property. This all suggests that income indirectly generated by inventory is not sourced at the taxpayer's residence like personal property under 865A. So, we would submit that that means that 865B applies in a situation like this, where you have a rule like 751A indicating that this part of the partnership of assets are treated separately as a separate sale of different property. I guess I'm not quite clear on why you're starting with 865 because I assume that it's common ground that unless 751A does the work that you think it does, it doesn't matter what 865 says. Well, that's fair, but part of the other side's argument here is that you need an actual sale. That's their whole point, right? There can't be some other type of sale. Our point is that 751 does make a different type of sale. Well, it might. I guess it's just the way you started it made it sound like we should read 751A in the context of sourcing issues to potentially work differently than we'd read it in other contexts. That's not what I'm suggesting. Okay, then there's no need to apologize. I just want to make sure I understand why you started with 865 because it seems to me that the whole question boils down to whether 751A does the work that you think it does or does more limited work than you think that the taxpayer. Yes, that's true. And 865 is just going to be a follow-on to that. It's not that 865 is actually helping us decide what work 751A does. That's fair. We start with 751A and decide what work it does. That's fair. I just want to make sure I'm not misunderstanding. No, you're not misunderstanding. Okay. Then on 751, then that takes 751A. Yes. And then the question becomes, why do we read 751A to do not just a characterization, as the taxpayer argues, but to do more to say that actually we should treat this as if it was a sale of the inventory? Right. So they were in the reply brief. Ms. Rawat relies heavily on a plain language argument here. But if you look at the language of 751A, characterization is not there. Ordinary income is not there. Ordinary income appears in 751C. So Congress could have used that phrase if that's what it wanted to do, if it wanted to suggest that this was restricted to a characterization. And if you look at the 1976- I'm sorry, but I mean, 741 is just by its very title about character. And that is where you get the 750 reference, has the cross-reference of 751. So it says, such gain or loss will have, in other words, the character of capital gains for purposes of taxation, except under 751. So it tells us that 751 is talking about the character for inventory sales. So doesn't it? It does, but we know that 741- You don't need to have the word character in 751 to understand that 751, at least 751A, which is relevant here, is talking to us about the character. And we don't dispute that it does that. Okay, I thought you just said the words are not here. I know, but all I'm saying is it's not restricted to that by its language. Okay, all right. So are you disputing that the language realized from the sale or exchange of property other than a capital asset means something other- do you think it means something other than ordinary income? Because that was old phraseology Congress had used throughout the tax code. And then- Yes. More recently it's updated. So you dispute that realized from the sale or exchange of property other than a capital asset in 751A means ordinary income? We agree. It does mean that, but it can mean more. And we would note that Congress- Is there any- where else in the tax code when Congress has used that phrase has meant more than ordinary income? I can't point you to an example of that, but I would note that Congress did not change that phrasing here when it changed it elsewhere. It didn't change it. It's a big tax- I mean, so maybe it was deliberate, or maybe it's a great big tax code that it got missed. Well, they did change other provisions within Section 751. They changed other provisions. That's a fair point. So then are you arguing that realized from the sale or exchange of property other than a capital asset, you're saying it means ordinary income plus? Yes. Does this phrase exist anywhere else in the U.S. Code anymore? Is this the only place where they left it in? It exists. It definitely exists in Sections 64 and 65, which were the provisions added to talk about ordinary income and ordinary loss. Does it do something more there? Or does it- No, we would suggest it does more there. You suggest it does or you don't? No. So, no, I'm getting- okay. So, historically, this phrase meant ordinary income. And Congress replaced it in many parts of the U.S. Code with the phrase ordinary income. It left it for whatever reason, we aren't quite sure, in a few different places. But other places where that phrase has been left, it still just means ordinary income. Everyone knows that's what the language meant. It's what it always meant. Right. Although it was added as part of those changes into that. In the other provisions? Yeah, in 64 and 65. But you're not arguing that it means anything different? No, but I'm not saying it can't. This is the one time- is this the only time you're aware of that you have this leftover mouthful of language for ordinary income? That the government, the commissioners have the view that by leaving it there, Congress changed its meaning from ordinary income to ordinary income plus nature of the transactions. I don't think that Congress changed its meaning by leaving it there. Okay, so then it had the same meaning when it was left and everything else- when they changed it in other parts of 751 and left it here, it didn't change its meaning? I think part of it is, yes, it was intended to indicate that there was ordinary income here, but there was also set up as a contrast with sale of a capital asset. Then you have 751A, which in contrast to that, says that the sale of this other property is considered a sale or exchange of property other than a capital asset. So we know what's being sold in the sale discussed here is not the partnership interest. It's something else. We know what's being sold is different, we just know the income treatment is different. So prior to Congress- I'm not a tax lawyer expert like you at all, so I'm just trying to understand how this language has been used by Congress through the tax code. Prior to the time when Congress substituted in most places phrase ordinary income for this longer realized from the sale or exchange of property other than a capital asset, prior to the time that made that change, did this phrase in 751 mean something other than ordinary income? We think that the consistent way to read this, of course, commissioners- The commissioner position under the revenue ruling prior to Grecian Magnesite was different. We took the position that 741 and 751 were both restricted to characterization. The tax court rejected that position in Grecian Magnesite and said no. Looking at 741, the partnership interest is a unitary interest, and it applies when we apply the sourcing rules here. And consequently, when you're asking what our position was, how we read it back then, it might have been different. But to give you a consistent reading, our position is in the Grecian Magnesite world. We believe it must be something. Okay, in the pre-Grecian Magnesite world, did the commissioner consistently read this phrase to mean ordinary income? I can't give you an answer on that because I believe the revenue ruling came out in the 1990s. So the changes we were talking about were made in the 1970s. The statute came out in the 1950s. So we're talking about at least four decades before the revenue ruling came out and two decades before Congress made the change to ordinary income in most places. So there isn't a lot of indication as to what Congress originally meant when it used this language other than the legislative history we have from 1954, which does talk about this being the inventory and unrealized receivables being severed from the rest of the partnership interest, suggesting it could apply more broadly than just being restricted to ordinary income. I think a simple question, maybe it just doesn't fit in here, but that's my problem. Is the reading that the commissioner today is giving to this language realized from the sale or exchange of property other than a capital asset as ordinary income plus more, is there anywhere else in the tax code where the commissioner has given that same language that meaning? I'm not aware of a particular instance to cite to you. Are there other instances in the tax code where the commissioner has read that language as meaning just ordinary income? I thought you said at the beginning that was how you read this language. It's part of how we read it. You're not aware of other places where you've read it as ordinary income plus, but you're not even sure you've read it as ordinary income in other places? No. Fair point, yes. We understand that that's what it has been read as. That's what Congress was reading it as. That's why I changed it. So this is the only place in the tax code where it's being read as ordinary income plus, and you have your arguments tax relief for why that's happening. I just want to make sure the same phraseology has a different meaning here than anywhere else in the U.S. tax code that you're aware of. I'm not aware of a specific instance to cite to you. The only other place that I'm aware of off the top of my head of where that same language appears is in section 65, which were the provisions added by the 1976 changes. Right, and there the commissioner, as far as you know, has just read that as ordinary income. Yes, but characterization can have other effects throughout the tax code. That doesn't mean it's some self-contained thing. Well, I'm just asking the power of this language. There could be other things in the tax code that will affect how that ordinary income is treated, but you're not saying that there's anything in that phraseology, as it appears in 64 and 65, that says ordinary income plus. I'm not aware of any interpretation of that. I'll ask you a question similar to what I ask your opposing counsel. I think Rwanda did not file U.S. taxes before 2008. Under your theory, should she have expected to be taxed each year before then when inventory was sold? Yes, yeah, she should have been. I believe that's correct because the inventory sales would flow through the partnership to the partners. If you win here, are you planning to dismiss the innovation venture suit? No, your honor. Why not? Why not? Because that case is still being litigated. So the issue is there's a whipsaw assessment here because our primary position in that case is that there's no economic substance to the sale, the transaction. But we asserted this whipsaw position to make sure that the commissioner is not left without a taxpayer. We requested multiple times in the tax court. A whipsaw position is when the IRS argues one thing in one court and then the exact opposite thing in the other court. Right. It's essentially to ensure that you don't have two different taxpayers saying the other person owes the money who win in two separate venues and under inconsistent theories. Okay. And then was that your whole answer? Yes. And then do you know if there are other cases similar to Verwatt's where a pre-2017-18 sourcing rule would govern that are still pending? Pre-2007 sourcing rule? 2017 or 18, that's when the new tax. Right, right. But do you know if there are any cases where that pre-2017 regime applies that are still pending? I'm not aware of a specific case that has been filed publicly. I believe there may be cases in the pipeline within the IRS system. That still are within that regime. Okay. And I see I'm out of time, your honors, unless you have any other questions. Thank you. We will rest our briefs. Thank you. Thank you, counsel. Mr. Rezek, we'll give you three minutes for rebuttal. Thank you. I just want to address a couple of the questions earlier. Judge Millett asked if there's other provisions in the code that change the character of the resulting income without disaggregating the property or changing the property. So we actually cited one in our brief. It's in our opening brief, page 16, note 5, section 306A1A. It was just an example. I think that we could probably come up with other examples. But that's the answer to that question. Certainly out there. Second, I want to just focus on why this has to be about the character of the income rather than the underlying property. If you look, not only does the regulation first paragraph say it's about character, and the IRS thought section 751 was just about character for a long time, and even said so in subsequent reg that we cited in our reply brief in 861 reg. The computation of how you do this indicates that they have to be allocating some of the gain, not the underlying property. The reg provides, you take all of the partnership inventory, add it up, figure out how much that is, and then you add up its fair market value. And then that delta is allocated by the percentage of the partnership interest that's being sold. So in that case, Mrs. Rawat got 29.2% of the amount of gain. She didn't get 29.2% of the inventory. She didn't get the yellow bottles while somebody else took the red bottles. She sold a partnership interest, and part of her gain is treated as ordinary income. That's all we have here. We do not have an actual sale of inventory. As to your question, Judge Falker, about prior years, she certainly got partnership distributive shares on those. In fact, there's one very small amount for this year. For 2008, there wasn't much there because the transaction occurred on the fourth day of the year. But in prior years, she did, and she paid U.S. tax on those because she is, by virtue of section 875A, those are treated as in connection with the U.S. trade or business of innovation ventures. There's nothing similar, and just as in Grecian Magnesite, just by virtue of the fact that the partnership is in a trade or business and your distributive share is sourced accordingly doesn't mean that you're in that trade or business, and what you generate when you sell a partnership interest is effectively connected income. It's the exact same general principle there. I just want to last address the whipsaw point. There's no whipsaw here. Innovation Ventures was taxed on this transaction, and that's the whole issue in that other case, and Mrs. Rawat was taxed on this transaction. Holding for Mrs. Rawat, it does not create a whipsaw here. Can I ask you the same question I asked counsel for the other side? This phrase realized from the sale or exchange of property other than capital asset. Um, you've argued it means ordinary income. You're talking about the last clause of section 751. 751A2. Well, it's actually it's A, but it follows A2 because it's flush line, but yes. Right, 751, so A. That used to be replaced through the code was replaced most places by the phrase ordinary income. This one was not for some reason. Right. There's only a couple others. Places where this old language or maybe it was even newly put in. This language appears in the US in the tax code. Oh, I think it's it's it's quite prevalent in the code. So why did Congress change it everywhere? Why didn't it replace it here when you have references elsewhere in 751 to it? Are we supposed to? Does that support their argument that it must now mean ordinary income plus something more? Your Honor, we all wish Congress was more consistent in its drafting. But when they changed when they added sections, I think it's 64 and 65 and said ordinary income means these things. They didn't go back through the code and make conforming amendments. Anyway, they just didn't. I wish they had. They do use ordinary income in 751. They do. They use it in other in other places in the code. Numerous other places. The difficulty for us is that within the same statutory section. They use the phrase there and they didn't use it here. And so there's that. Well, it's it must have meant something more. It's in a long list of provisions that are treated as other kinds of income and they used ordinary income. It is true. And the next to the last line of that. But I don't know if that was added subsequently post the 1975 amendment. I've changed in the in the statute. I haven't researched that issue, but it's very clear that. Before they changed the law to say we mean ordinary income. That's what that phrase from the other than a capital at sale or exchange of property other than a capital asset. That's what that meant. Are you aware of any other place in the US code where this language still exists? Yes, there's there's other places where it still exists and where either the commissioner or a court has held that it means something more than ordinary income. I don't know any place where it does what the latter part of your question suggests, Your Honor. You're not aware of any courts giving it that meaning? No. Thank you. You know, you have to go through word search is great for that to see if it's still in other places or where it is, but I'm quite confident it is. Thank you, counsel. Thank you to both counsel. We'll take this case letters. Thank you, Your Honor.
judges: Srinivasan, Millett, Walker